FILED
United States Court of Appeals
Tenth Circuit

November 24, 2014

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MIKE C. WARD,

       Plaintiff - Appellant,

v.

SALLY JEWELL, in her official
capacity as Secretary, United States
Department of Interior,

       Defendant - Appellee.

No. 14-4006

---

**Appeal from the United States District Court**
**For the District of Utah**
**(D.C. No. 2:10-CV-00087-DAK)**

---

Nan T. Bassett, Kipp and Christian, P.C., Salt Lake City, Utah, for
Plaintiff-Appellant.

Jeffrey E. Nelson, Assistant United States Attorney (David B. Barlow,
United States Attorney, on the brief), District of Utah, Salt Lake City,
Utah, for Defendant-Appellee.

---

Before **KELLY**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

Mr. Mike C. Ward is an employee of the United States Department of the Interior, Bureau of Reclamation. Mr. Ward once held a supervisory position; but during a department reorganization in 2005, he was demoted and given only technical duties.

When the department began a second reorganization in 2008, Mr. Ward asked for a position with his old supervisory responsibilities. But those responsibilities were then being handled by another employee, Mr. James Durrant. Without a vacancy, Mr. Ward had to remain in his nonsupervisory job.

Dissatisfied with that job, Mr. Ward applied in 2010 for a managerial position in Provo, Utah. The application process included interviews with a panel and the person who would ultimately make the hiring decision. After interviewing with the panel and the decision-maker, however, Mr. Ward did not get the job.

He blames his employer (the Department of Interior), invoking Title VII and claiming retaliation for the refusal (1) to reinstate him in his old job and (2) to promote him to the Provo managerial position. To survive summary judgment on these claims, Mr. Ward had to show a connection between the protected activity and the refusal to give Mr. Ward his prior supervisory responsibilities or to hire him for the Provo managerial job.

2

In this appeal, we must decide:

- Can Mr. Ward survive a motion for summary judgment on the first claim without any evidence of a causal connection between his protected activity and the refusal to demote or fire Mr. Durrant?

- Can Mr. Ward overcome a motion for summary judgment on the second claim without any evidence of a causal connection between his protected activity and the hiring decision?

We conclude no reasonable fact-finder could infer retaliation; thus, we affirm the district court's award of summary judgment to the Department of Interior.

## I.    Reorganization and Retaliation

These claims are based on three series of actions:

- two reorganizations,

- Mr. Ward's involvement in proceedings in the Equal Employment Opportunity Commission, and

- demotion of Mr. Ward and his inability to get back his prior supervisory responsibilities.

### A.    The EEOC Proceedings

In 2004, Mr. Ward's subordinate, Ms. Michaela Nelson, filed a discrimination complaint about Mr. Ward. The complaint was investigated by the EEOC, and Mr. Ward participated.

The Department of Interior then reorganized, and Mr. Ward's supervisory responsibilities were turned over to another person (Mr. James Durrant). Upset by this change, Mr. Ward complained to the EEOC. A

few years later, Mr. Ward unsuccessfully tried to get these responsibilities back.

**B. The Provo Job**

Mr. Ward was unable to get Mr. Durrant's job. Thus, when a managerial vacancy arose in Provo, Mr. Ward applied along with four other individuals. Though Mr. Ward was not recommended by the initial panel, he and the other candidates were interviewed by the decision-maker, Mr. Larry Walkoviak. Mr. Ward was not selected for the position.

**C. The Retaliation Claims**

Mr. Ward complains in this suit about

- the refusal to give him Mr. Durrant's supervisory responsibilities, and

- the hiring of another applicant for the Provo job.

In Mr. Ward's view, these decisions involved retaliation for his involvement in the EEOC proceedings years earlier.

**II. The Test for Retaliation**

"We review the district court's summary judgment order de novo, and apply the same legal standards as [did] the district court." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012). The district court had to grant summary judgment if the Department of Interior showed the absence of a genuine dispute on any material fact. Fed. R. Civ. P. 56(a).

4

To determine whether a genuine issue of material fact existed, we view the evidence in the light most favorable to Mr. Ward. *Doe*, 667 F.3d at 1122.

Mr. Ward can state a valid Title VII claim in one of two ways. He can present direct evidence, or he can rely on circumstantial evidence and utilize the *McDonnell Douglas* burden-shifting test. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Because Mr. Ward's evidence is circumstantial, he must rely on *McDonnell Douglas.*

Under *McDonnell Douglas*, Mr. Ward bears the burden of proving a prima facie case of retaliation by a preponderance of the evidence. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 539 (10th Cir. 2014). In the prima facie case, Mr. Ward must show that

> (1)    he engaged in protected opposition to discrimination,
>
> (2)    he suffered an adverse employment action, and
>
> (3)    a causal connection existed between the protected activity and the adverse employment action.

*Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003).

The Department of Interior does not dispute the first two elements, so we consider only whether Mr. Ward established a causal connection between his protected activity (participation in the EEOC proceedings) and the adverse employment action (the refusal to give him his prior job responsibilities and the hiring of another applicant for the Provo position).

5

To establish a causal connection, Mr. Ward must present "evidence of circumstances that justify an inference of retaliatory motive." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007). If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection. *Id.* Because Mr. Ward's participation in the EEOC proceedings took place years earlier, Mr. Ward must use "additional evidence . . . to establish causation." *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (stating that a three-month period between the protected conduct and the adverse action was too long for a fact-finder to infer causation).

To survive summary judgment, Mr. Ward had to present "additional evidence" tying the adverse employment actions to Mr. Ward's participation in the EEOC proceedings. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253-54 (1981). The Supreme Court has likened this burden to a showing of "but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 2533 (2013). The evidence of but-for causation "must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Mr. Ward has not presented evidence connecting the adverse employment actions to his participation in the EEOC proceedings. Thus, he has not satisfied his burden to present a prima facie case. Without

presentation of a prima facie case, the district court properly awarded summary judgment to the Department of Interior.

## III. Retaliation Claim 1: The Refusal to Fire or Demote Mr. Durrant and Give Mr. Ward His Prior Supervisory Responsibilities

The first retaliation theory is that the Department of Interior should have demoted or fired Mr. Durrant and given Mr. Ward his previous supervisory responsibilities. Mr. Ward points to four pieces of evidence to support his claim of retaliation:

(1)     Mr. Rhees told Mr. Ward that it would be "essentially impossible" to put Mr. Ward or Ms. Nelson in a supervisory position because of "things that had happened in the past."

(2)     Mr. Ward, Ms. Nelson, and Ms. Postell were stripped of their supervisory responsibilities after participating in the EEOC process.

(3)     Mr. Ward's performance evaluations as a supervisor did not refer to personality conflicts or communication problems.

(4)     Mr. Ward had the required classification for a supervisory position, but Mr. Durrant did not.

Mr. Ward believes these pieces of evidence link his EEOC participation to the failure to give him his old supervisory responsibilities. But this link rests on surmise.

Mr. Rhees's statement is probative of retaliation only if we speculate on his meaning. Even Mr. Ward testified that he was not sure if Mr. Rhees was referring to the EEOC proceedings. Appellant's App. at 58. We cannot speculate on Mr. Rhees's meaning. Thus, this statement does not

7

provide the required link between Mr. Ward's statements in the EEOC proceedings and the refusal to give him his old supervisory responsibilities. *See Bones*, 366 F.3d at 875.

Mr. Ward likewise cannot prove causation by pointing to demotions for other individuals participating in EEOC proceedings. Mr. Ward's first claim does not involve a demotion; the claim involves the decision not to give him his old job responsibilities years after they had been taken away.

He also relies on his performance evaluations, stating that they do not refer to any personality conflicts or communication problems. This reliance is misguided because the performance evaluations are not in the record,[1] and Mr. Ward's description would not support an inference of causation. Mr. Ward admitted "there [had been] interaction issues" with Ms. Postell and Ms. Nelson. Appellant's App. at 59. We cannot infer that just because Mr. Ward had positive evaluations, he would have been reinstated to a position already being occupied if he had not participated in the EEOC proceedings.

We also cannot infer causation based on Mr. Durrant's classification. According to Mr. Ward, Mr. Durrant did not have the required classification for a supervisory position. But reclassification would have been easy, involving only a ministerial adjustment. Appellant's App. at

---

[1] *See* Oral Arg. 12:03-12:10.

8

114. As a result, we cannot infer that the Department of Interior acted in retaliation by refusing to oust Mr. Durrant in favor of Mr. Ward.

On the first claim, Mr. Ward fails to establish a prima facie case of retaliation. A reasonable fact-finder could not infer retaliation from the decision to keep another employee in his job rather than replace him with someone who had admittedly experienced "interaction issues" with other employees. Accordingly, the district court properly granted summary judgment to the Department of Interior on the claim involving a refusal to give Mr. Ward his prior supervisory responsibilities.

## IV. Retaliation Claim 2: The Decision Not to Promote Mr. Ward to the Position as Provo Area Manager

The second retaliation claim involves Regional Director Larry Walkoviak's decision not to hire Mr. Ward as the Provo Manager. On this claim, the element of causation is again lacking.

Three facts are undisputed:

(1) Five qualified candidates were interviewed by a panel that included Mr. Rhees and Ms. Ann Gold. The panel recommended two candidates to Mr. Walkoviak, who would make the final selection. Mr. Ward was not among the panel's two recommendations. But, Mr. Walkoviak interviewed all five of the candidates. After these interviews, he selected someone other than Mr. Ward.

(2) During a prior EEOC claim, Mr. Ward had alleged retaliation by Ann Gold's husband. At the time of the panel interview, Mr. Ward also had a pending claim alleging discrimination by Mr. Rhees.

9

(3) In 2010, Mr. Ward completed additional work at the department's Mid-Pacific Region. For this work, the Mid-Pacific Region recommended a $4,500 award for Mr. Ward. Mr. Rhees was required to approve the award, but he reduced the amount to $2,000.

These facts do not support causation because Mr. Ward does not claim retaliation by Mr. Walkoviak. In the absence of retaliation by Mr. Walkoviak, Mr. Ward could create a fact issue only through a theory of "Cat's Paw" liability. Under this theory, the biased motive of a subordinate can be imputed to the final decision-maker. *EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 487-88 (10th Cir. 2006). But the theory does not apply when decision-makers conduct their own investigations without relying on biased subordinates. *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1295 (10th Cir. 2013).

To survive summary judgment on a "Cat's Paw" theory, Mr. Ward must establish

- bias by the subordinates, Mr. Rhees and Mrs. Gold,

- their influence in the decision-making process, and

- Mr. Walkoviak's adoption of Mr. Rhees and Ms. Gold's biased recommendation without an independent investigation.

*English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1011 (10th Cir. 2001); *BCI Coca-Cola*, 450 F.3d at 487-88.

Mr. Walkoviak did not accept the panel's recommendation, but he interviewed all of the candidates (including Mr. Ward). Mr. Walkoviak

10

then selected another applicant who had served as the Deputy Area Manager in Provo for three years and had experience with land-management issues, recreational issues, dam safety, planning activities, and interaction with stakeholders in the Provo area. The panel ultimately had little input into the hiring decision. That decision was made by Mr. Walkoviak. Accordingly, liability cannot be based on a "Cat's Paw" theory. *See Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 950 (10th Cir 2011) (holding that the "Cat's Paw" theory did not apply when the decision-makers conducted their own investigation and personally interviewed the employee before firing her). Without the "Cat's Paw" theory, Mr. Ward lacks any evidence of retaliation by Mr. Walkoviak. Thus, the district court properly granted summary judgment to the Department of Interior on the second claim.

## V. Conclusion

Mr. Ward had to show that, but for his participation in the EEOC proceedings, he would have been given his old supervisory responsibilities or been selected as the Provo manager. He has not made this showing. Thus, we affirm the district court's award of summary judgment to the Department of Interior.