FILED
United States Court of Appeals
Tenth Circuit

January 13, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LISA BRAINARD,

        Plaintiff – Appellant,

v.

CITY OF TOPEKA,

        Defendant – Appellee.

No. 14-3055
(D.C. No. 5:12-CV-04017-RDR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff and appellant, Lisa Brainard, appeals the grant of summary judgment to the defendant, City of Topeka ("City"), in her case claiming

_____

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

discrimination based on age and gender in her termination from employment with the City.  For the following reasons, we affirm.

## BACKGROUND

As the district court noted, many of the facts in this case are not disputed. Ms. Brainard is a female over the age of forty.  She was employed by the defendant City from May 1981 until her termination on February 11, 2010.  She held the position of Technical Administrative Manager in the Information Technology ("IT") Department at the time of her termination.  The Technical Administrative Manager performed administrative duties such as payroll, accounts receivable and purchasing.  Appellant's Appendix. ("Aplt. App.") at 75, 151.

Mark Biswell was initially employed in the IT Department of the City as a deputy director in 2001.  He was appointed the interim director in 2007, and was named the Director of IT in February 2008.  In March 2008, Mr. Biswell implemented a plan for restructuring the IT Department.  The restructure affected Ms. Brainard's position, changing it from a supervisory to an administrative post. Her pay was not affected.

In 2008, Ms. Brainard and a male employee of the City, Bill Stephens, were both serving as managers in the IT Department.  Ms. Brainard's position had the same job classification as Mr. Stephens' position.  Mr. Stephens' job duties, however, "were very different from plaintiff's."  Mem & Order at 3-4; Aplt. App.

at 422-23. Mr. Stephens handled web site development and maintenance, help desk support, internet appliance maintenance, internet-based applications, and training. Aplt. App. at 155. Ms. Brainard referred to Mr. Stephens as her "equal counterpart." Mem. & Order at 4; Aplt. App. at 423.

Mr. Stephens retired from the City in September 2009. His position was not filled after he retired. After his retirement, Mr. Stephens did some contract work for the City, including training and working on PCs. Mr. Stephens was not full-time, did not receive any benefits and was not on a retainer, while he performed these post-retirement duties. Aplt. App. at 298-301, 311, 347.

On August 18, 2009, the Topeka City Council Budget Committee voted to remove $100,000 from the IT Department's budget. Prior to that vote, Mr. Biswell had told the Budget Committee that a cut of that amount would force him to lay off one employee from the IT Department. On August 21, 2009, Mr. Biswell met with the City's Human Resources ("HR") Director and the City Manager to discuss the loss of funding and what options were available. Mr. Biswell was instructed to prepare a letter to his staff explaining the budget problems and indicating that there would be a layoff in the IT Department. That letter was shared with the IT staff on August 28, 2009, and it explained the procedures to be followed to determine which position would be eliminated.

In 2010, the City instituted a reduction-in-force ("RIF"). Ms. Brainard was terminated on February 11, 2010, and her position was eliminated. No managers

were hired or retained in the IT Department after Ms. Brainard's position was eliminated following her termination. Four other positions were also eliminated: Computer Operator, User System Consultant, Electronics Communications Manager and Application Systems Administrative Manager. These positions were vacant at the time they were eliminated; all three IT Manager positions were eliminated.

As indicated above, Ms. Brainard's major job duties as Technical Administrative Manager were payroll and invoicing. No other position in IT did those duties. Payroll had become centralized in late 2009 to 2010. Following Ms. Brainard's termination, her other job duties were mostly moved to other departments and performed by several existing employees: Linda Hardesty or Terri Fincham in Contracts and Procurement performed her purchase requisition entry duties; Becky Burks in Payroll performed her payroll duties; and Kim Johnson or Cheryl Atherly in Finance performed her invoice/PO matching duties. Mr. Biswell assumed her other duties.

In carrying out the RIF, the City eliminated vacant positions first, then filled positions. Management employees were not allowed to "bump" other employees, and seniority was not a consideration for management-level employees in determining which positions would be eliminated. Two criteria were used to identify which positions would be eliminated: minimizing the impact of services to the public and job function/reorganization. Aplt. App. at 144.

Prior to Ms. Brainard's termination, Mr. Biswell learned of a vacant court administrator position and inquired whether Ms. Brainard could be considered for that position. Id. at 99-100; 122-23. The record indicates that the court position was ultimately deemed not suitable for Ms. Brainard, and she makes no argument that she should have been offered that position.

During her employment, Ms. Brainard had brought several issues of concern to the attention of the HR Director, Jacque Russell. These issues were: (1) her job change in 2008 (changing her job from supervisory to administrative); (2) the fact that her job evaluation was left overnight on a printer on one occasion; (3) an incident in which Mr. Biswell noisily and angrily opened a box in the IT office; and (4) the fact that she was unable to locate Mr. Biswell at some point.

Following her termination, Ms. Brainard filed a charge of discrimination with the EEOC, alleging discrimination on the basis of age and gender and retaliation. In response to the request for the "date discrimination took place" she stated, "2-11-2010," the date of her termination. After receiving a notice of right to sue, she filed the instant petition, asserting claims under the Age Discrimination in Employment Act, 29 U.S.C.§ 623(a)(1) ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. ("Title VII") in connection with her employment termination.

The City ultimately filed a motion for summary judgment. The district court granted that motion, and this appeal followed.

**DISCUSSION**

"We review the district court's summary judgment order de novo, and apply the same legal standards as the district court." Doe v. City of Albuquerque, 667 F.3d 1111, 1122 (10th Cir. 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Doe, 667 F.3d at 1122 (internal quotation marks omitted). We note, as did the district court, that the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact*.*" Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009) (internal quotation marks and brackets omitted).

In addressing the City's motion for summary judgment, the district court observed that, because Ms. Brainard presented no direct evidence of age or sex discrimination under the ADEA and Title VII, but, rather, only presented circumstantial evidence, the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), applied. "Under McDonnell

-6-

Douglas, a plaintiff carries the initial burden of establishing a prima facie case of discrimination." Tabor v. Hilti, Inc., 703 F.3d 1206, 1216 (10th Cir. 2013).

In order to establish a prima facie case of discrimination in the context of a RIF, Ms. Brainard must show: "(1) that she is within the protected age [or gender] group; (2) that she was doing satisfactory work; (3) that she was discharged despite the adequacy of her work; and (4) that there is some evidence the employer intended to discriminate against her in reaching its RIF decision." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998) (noting that the prima facie case is the same for age and gender claims in the RIF context, id. at 1167 n.4). "The fourth element may be established through circumstantial evidence that the plaintiff was treated less favorably than younger [or male] employees during the RIF." Id. (quotation omitted). Thus, "[e]vidence that an employer fired qualified older [or female] employees but retained younger [or male] ones in similar positions is sufficient to create a rebuttable presumption of discriminatory intent. . . ." Branson v. Price River Coal Co., 853 F.2d 768, 771 (10th Cir. 1988); see also Beaird, 145 F.3d at 1166.

As the district court noted, Ms. Brainard suggests that she has demonstrated a prima facie case of age and sex discrimination because she was not afforded the same opportunities as other male or younger employees. She relies on the following: (1) Mr. Stephens, a male employee who Ms. Brainard claims was similarly situated, retired in the fall of 2009 but was offered continued

-7-

employment with the City as an independent contractor after Mr. Biswell learned that he would have to cut $100,000 from the IT budget; (2) during the same general time frame that she was discharged, the City hired two employees, Marisol Romo and Kim Pryer, for positions for which Ms. Brainard was qualified; and (3) there were "numerous employees" retained by the City in the IT Department who do not belong to either of Ms. Brainard's protected categories.

The district court explained why Ms. Brainard failed to establish a prima facie case regarding each of these factual scenarios. Regarding Mr. Stephens, the court stated that the "facts before the court fail to show that Stephens was similarly situated with plaintiff." Mem. & Order at 8; Aplt. App. at 427. The district court determined that, while both Mr. Stephens and Ms. Brainard were IT managers, Mr. Stephens had also been a trainer for the IT Department. Following his retirement, he was hired as an independent contractor performing training, and he also tended the public computer labs at the City community center. As the court explained:

> There is no evidence that plaintiff could perform any of the tasks that Stephens did as an independent contractor. Stephens performed entirely different work from that done by the plaintiff during her employment in the IT Department. Moreover, there is no evidence that Stephens was hired as an independent contractor because he was male. The evidence shows that the IT budget contemplated the hiring of an independent contractor when Stephens' retirement was considered. Biswell agreed to hire Stephens following his retirement because he was experienced and could easily handle the tasks that needed to be carried out. Finally, plaintiff has not shown that there was any position she could have undertaken as an independent

-8-

contractor with the City. She has also not demonstrated that she ever sought such employment.

Id. at 9-10; Aplt. App. at 428-29.

Ms. Brainard has not refuted any of those determinations. Indeed, she argues that the district court "improperly adjudged Stephens as failing the test for qualification as a 'similarly situated' employee" by stating that Mr. Stephens "held the same prior job classification as Brainard, and also the same essential title as an IT department 'manager.'" Appellant's Br. at 13. She claims that "[a]t a bare minimum, these facts suffice to create a genuine issue of material fact." Id. We disagree. As the City points out, Mr. Stephens was not even an employee of the City at the time of the RIF. Rather, he was a retiree who performed some services for the City on a contract/independent contractor basis. Furthermore, Ms. Brainard does not even attempt to refute the district court's factual recitation of the vast differences between the duties performed by Ms. Brainard and Mr. Stephens, despite their sharing of the general title of "IT manager."

With respect to Ms. Romo and Ms. Pryer, whom Ms. Brainard says are younger than herself, the district court explained why the evidence did not support Ms. Brainard's claimed inference of discrimination in their hiring. The district court stated as follows:

> The evidence before the court shows that Pryer, who is approximately one year younger than plaintiff, worked for the City as a temporary employee (she was employed by a temp agency) approximately a year before the RIF began. She worked in various

departments, including Finance, Fire and IT. She was not, however, hired by the City until a year after plaintiff's discharge. Thus, she did not occupy a position that could be filled by plaintiff at the time of plaintiff's termination. The hiring of Pryer does not demonstrate any inference of age discrimination.

Romo, who is eleven years younger than plaintiff, had been a full-time employee of City4 since 2006. City4 is the government access cable television channel for the City of Topeka. Biswell did not supervise or make employment decisions or recommendations for City4 employees even though they were under IT's budget. Romo left City employment in November 2009. Her position was not eliminated. Her job duties were performed by a public information officer in another department on a temporary basis until Romo returned in March 2010.

Mem. & Order at 10-11; Aplt. App. at 429-30. While Ms. Brainard averred by affidavit that she was qualified for the position filled by Ms. Romo, the district court stated that she "fails to provide any support for that conclusory statement and the record before the court fails to provide any support for it." Id. at 11; Aplt. App. at 430.[1] The court therefore correctly found that the undisputed

---

[1] The district court stated that Ms. Romo's position was titled "Publication/Script Writer, Special Projects Coordinator" and

required a degree in communications, journalism, film or a closely related field and two years of experience in advertising, public relations, broadcasting, journalism or a related field; experience in writing copy, public speaking, public presentations, reporting and editing; experience in running television production equipment and producing television and radio ads. Plaintiff does not have any college credit and has only a vocational certificate from 1980 in data entry. Her work experience since 1981 has been information technology with the City.

Mem. & Order at 11; Aplt. App. at 430. The court accordingly found that "the

(continued...)

evidence demonstrated no inference of discrimination in the hiring of Mses. Romo and Pryer.

Regarding the "numerous" employees allegedly retained in the IT Department who did not belong to either of Ms. Brainard's protected categories when she was terminated, the district court held that "an examination of the facts concerning these employees reveals the mistake of plaintiff's analysis." Mem. & Order at 12; Aplt. App. at 431. The employees named by Ms. Brainard are Lacey Bisnett (under the age of forty), Kyle Brown (male under the age of forty) and Aaron Charest (male under the age of forty). The court found that "Lacey Bisnett and Kyle Brown were not hired until sometime after plaintiff's termination . . . and [therefore] cannot be considered as support for plaintiff's theory of discrimination." Id.

Mr. Charest, an under-forty male, was retained by the IT Department at the time of Ms. Brainard's discharge. The court found he was "not similarly situated" as Ms. Brainard:

> As previously pointed out, no managers were hired or retained in the IT Department after plaintiff's position was eliminated and she was terminated. Charest was a "system developer." There were several employees, both male and under forty, who were retained in the IT Department at the time of plaintiff's discharge. These employees, however, were computer programmers, developers and engineers.

---

[1](...continued)
fact plaintiff was not 'offered' this [Ms. Romo's] position raises no inference of age discrimination." Id. Ms. Brainard makes no effort to dispute the correctness of the district court's finding on this point.

They were not similarly situated to plaintiff because plaintiff's responsibilities as an IT manager were payroll, contracts and other administrative duties.

Id. at 12; Aplt. App. at 431. The court thus found "no inference of age or sex discrimination in the termination of plaintiff from her position as an IT Department manager as a result of a RIF by the City of Topeka." Id. at 13; Aplt. App. at 432.

The district court then considered Ms. Brainard's claim of retaliation, prohibited under the ADEA and Title VII, because she claimed she had engaged in protected activity and was then terminated.[2] Ms. Brainard asserts she was discharged because she made complaints about Mr. Biswell to the IT HR Director. She further claims she has made out a prima facie case of retaliation and that she is able to establish that the City's proffered reason is merely a pretext for retaliation.

As the district court stated, retaliation claims under the ADEA and Title VII require "but-for" causation. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013) (Title VII); Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (ADEA); Davis v. Unified Sch. Dist. 500, 750 F.3d 1168, 1170 (10th Cir. 2014). As we recently stated, "[t]he evidence of but-for causation 'must be based on more than mere speculation, conjecture, or surmise.'" Ward v. Jewell, 772

---

[2]The City argues Ms. Brainard has abandoned this issue, as she failed to address its merits in her brief. We nonetheless explain why the district court's analysis of her retaliation claim is correct.

F.3d 1199, 1203 (10th Cir. 2014) (quoting Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004)).

To establish a prima facie case of retaliation, meeting the but-for standard, Ms. Brainard must show that "(1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1202 (10th Cir. 2008). The district court first considered whether Ms. Brainard had engaged in protected activity, and determined that it was "not clear that the various complaints raised by the plaintiff to the HR Directors were protected activity." Mem. & Order at 15; Aplt. App. at 434. Given that ambiguity, the court did not rest its decision on that ground; rather, it examined the remaining McDonnell Douglas considerations. Thus, the court stated that "[e]ven if the court found that plaintiff had presented a prima facie case of sex or age discrimination or retaliation based upon Title VII or the ADEA," . . . the court "cannot find that plaintiff has presented sufficient evidence of pretext." Id. at 17; Aplt. App. at 436.

Ms. Brainard argued that the following facts support her argument that the City's proffered reason for her termination was a pretext for discrimination or retaliation: (1) the City lacked any standard RIF methodology; (2) no procedure was established for determining who should be subject to the RIF and "the

decision was left to the head of the department, then rubber-stamped by the City Manager," id.; and (3) the City was able to find funds to hire other employees even though she was discharged for budgetary reasons. The district court rejected that argument.

As the court explained, in the RIF context, proof of pretext may include, but is not limited to, evidence that the plaintiff's termination was inconsistent with the RIF criteria articulated by her employer; a claimed business judgment was "so idiosyncratic or questionable that a factfinder could reasonably find that it is a pretext for illegal discrimination;" evidence showing that the employer inconsistently applied its RIF criteria; or other procedural irregularities in the RIF process. Beaird, 145 F.3d at 1169; see also Sanders v. Southwestern Bell Tel., L.P., 544 F.3d 1101, 1106-07 (10th Cir. 2008); Whittington v. Nordam Group Inc., 429 F.3d 986, 994 (10th Cir. 2005). This list is "not . . . exhaustive;" in determining whether a plaintiff has sufficiently demonstrated pretext, "we consider the evidence as a whole." Sanders, 544 F.3d at 1107. The district court noted that we have rejected a "pretext plus" standard, stating that "[n]o additional evidence is necessary to show discrimination because proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination." Jones v. Okla. City Pub. Sch., 617 F.3d 1273, 1280 (10th Cir. 2010) (further quotation omitted).

In assessing Ms. Brainard's claim of retaliation, the district court found it was "not persuaded that the evidence, even when considered in the light most favorable to the plaintiff, supports the arguments made by the plaintiff." Mem. & Order at 18; Aplt. App. at 437. As the court further explained:

> The evidence clearly shows that Biswell informed employees in August 2009 that budget reductions would require the elimination of one IT position effective October 30, 2009. The actual termination did not occur until February 11, 2010, but there appears to be no dispute that such an elimination was forthcoming. Moreover, the evidence shows that the criteria used to determine who would be terminated was based upon an evaluation of the function of the position, the ability to spread those duties to other positions, and the desire not to impact the services of the citizens of Topeka.
>
> Plaintiff has failed to demonstrate that the City did not follow the criteria that it established concerning this RIF. The evidence does not demonstrate that the City lacked objective criteria or that it failed to follow the criteria that it established. Plaintiff has failed to point to any evidence that the process used to determine the elimination of her position and her termination was any different from the processes used by the City to eliminate other positions for the RIF. An employer may choose the criteria it wishes to employ to conduct a RIF and "we will not disturb that exercise of [a] defendant's business judgment."

Mem. & Order at 18-19; Aplt. App. at 437-38 (quoting Beaird, 145 F.3d at 1169).

Ms. Brainard fails to refute the district court's analysis, or explain why and how the court erred. Ms. Brainard's only claim is that the "City admits it employed no standard RIF methodology." Appellant's Br. at 16. We are aware of no such admission by the City; indeed, the record supports the district court's statement that the City had criteria for implementing its RIF and those criteria in

no way support an inference of discrimination.  Ms. Brainard provides no citation to the record to support her claim of a lack of standards for implementing the RIF; in fact, her brief is completely devoid of citations to the record to support her claims of materially disputed facts.

In sum, we agree completely with the district court's rejection of Ms. Brainard's arguments.  We affirm its decision to grant the City's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge