**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DANA W. WEBSTER,

    Plaintiff - Appellant,

v.

DAVID J. SHULKIN, Secretary of the
Department of Veterans Affairs,[*]

    Defendant - Appellee.

No. 16-4140
(D.C. No. 2:13-CV-00095-DAK)
(D. Utah)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **HOLMES**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

Dana Webster applied for several promotions while employed as a police

officer for the Salt Lake City Veterans Affairs Medical Center (VAMC). He wasn't

selected for the positions, and he brought suit against the Secretary of the Department

of Veterans Affairs (VA) alleging age discrimination and retaliation.[1] The district

court granted summary judgment to the VA, and we affirm.

**I**

_____

[*] David J. Shulkin is substituted as defendant-appellee. *See* Fed. R. App. P.
43(c)(2).
[**] This order and judgment isn't binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.
[1] Webster also brought additional claims, but he doesn't challenge the district
court's resolution of those claims, so we don't address them further.

Webster worked as a police officer for the VAMC from 2002 through 2010. After he applied and was rejected for several promotions in 2009, Webster filed an administrative complaint alleging that the VAMC's decisions were the result of age discrimination or retaliation for his involvement in workplace complaints. Relevant here, the administrative law judge concluded that Webster (1) only timely exhausted his claims with respect to two missed promotions and (2) failed to establish that either of those decisions was based on his age or prior involvement in workplace complaints.

Webster then sued the VA, alleging age discrimination under the Age Discrimination in Employment Act (ADEA) of 1975, 29 U.S.C. §§ 621-634, and retaliation under the ADEA and Title VII of the Civil Rights Act (Title VII) of 1964, 42 U.S.C. §§ 2000e-2000e-17. The district court granted the VA's motion for summary judgment. Webster appeals.

## II

Webster argues that genuine issues of material fact precluded summary judgment on his age discrimination and retaliation claims.[2]

We review summary judgment orders de novo. *Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[2] In his opening brief, Webster also argues that the district court applied the wrong legal standard by requiring him to support his retaliation claim with a showing that he "feared the consequences" of engaging in protected activities. Aplt. Br. 34. But Webster concedes in his reply brief that the district court applied the correct legal standard to his retaliation claim. Thus, we need not address this argument.

2

judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Ribeau*, 681 F.3d at 1194 (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012)).

Webster's complaint first alleges that the VAMC discriminated against him because of his age in violation of the ADEA.[3] The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also id.* § 633a(a) (stating that certain employees of federal agencies are protected from age discrimination under the ADEA). A plaintiff in an ADEA case can establish a prima facie case of age discrimination for a failure to promote by showing that (1) he was within the protected age group at the time his employer failed to promote him; (2) he was qualified for the promotion; (3) his employer didn't select him for the promotion; and (4) a younger person was selected for the promotion. *Furr v. AT&T Techs., Inc.*, 824 F.2d 1537, 1542 (10th Cir. 1987). The VA doesn't dispute that Webster states a prima facie case under the ADEA.

Webster also alleges in his complaint that the VAMC retaliated against him, in

---

[3] At oral argument, Webster asserted that the district court erroneously ignored a disparate impact claim he brought in his complaint by failing to address that claim in the court's summary judgment order. We decline to address this assertion because Webster didn't raise it until oral argument. *See United States v. Dahda*, 852 F.3d 1282, 1293 n.7 (10th Cir. 2017) (explaining that issues raised for first time at oral argument are waived).

violation of the ADEA and Title VII, for engaging in protected workplace activities. Specifically, he points to his participation in an interview with an Equal Employment Opportunity (EEO) investigator—an interview that concerned his co-worker Officer Ryan Zumwalt's EEO proceeding.[4]

Under the ADEA and Title VII, federal employees are protected from retaliation for opposing a discriminatory employment practice. *See Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008); *Dossa v. Wynne*, 529 F.3d 911, 915 (10th Cir. 2008). To establish a prima facie case of retaliation, the plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (footnote omitted). For purposes of summary judgment, the VA doesn't dispute that "the circumstances of [Webster's] two timely [missed-promotion] claims meet the criteria for a prima facie case of retaliation." Aplee. Br. 18.

---

[4] A VA employee, former employee, or applicant for employment "who believes discrimination occurred on the bas[i]s of race, color, religion, sex, sexual orientation, transgender orientation, national origin, age (40 or over), disability, genetic information, or retaliation for EEO activities, may initiate a complaint of discrimination." *See* Filing an EEO Complaint 1 (Oct. 21, 2016), *available at* https://www.va.gov/ORM/EEOcomplaint.asp. In conducting an investigation, an EEO investigator "will take sworn statements from the complainant, responsible management officials, and other witnesses and gather relevant documents. The investigator will prepare a report summarizing the evidence." *Id.* at 2.

If the plaintiff establishes a prima facie case of discrimination or retaliation, the burden shifts back to the defendant to produce evidence that it made its decision for legitimate, nondiscriminatory reasons. *Sandoval v. City of Boulder*, 388 F.3d 1312, 1321 (10th Cir. 2004). And if the defendant satisfies its burden of showing that it took the challenged action for legitimate, nondiscriminatory reasons, then the burden shifts back to the plaintiff to establish that the defendant's explanation is a pretext for discrimination or retaliation. *Id.* A plaintiff may show that a defendant's proffered reason is pretextual by demonstrating that it is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reason[] [is] unworthy of belief." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008) (alterations in original) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)).

Here, the VA contends that the VAMC had legitimate, nondiscriminatory reasons for its decision not to select Webster for the two promotions at issue— namely, that Webster lacks interpersonal skills and because others were more qualified for the positions. In response, Webster acknowledges that he had trouble interacting with others at times. But he denies that this was the real reason for his missed promotions. In attempting to show that the VAMC's proffered reasons were a pretext for age discrimination or retaliation, Webster points to (1) comments he and others overheard regarding older officers; (2) instances of retaliation against him that are unrelated to protected EEO activity; (3) his involvement with Zumwalt's EEO complaint; (4) the VA's failure to follow its policies and procedures in connection

5

with Webster's timely missed-promotion claims; (5) the VA's failure to follow its policies and procedures in connection with Webster's untimely non-selection claims; and (6) evidence regarding the credibility of VAMC employees. For the reasons discussed below, we conclude that Webster fails to meet his burden to demonstrate pretext.

## A

Webster points to a number of comments made by Police Chief Albert Bell and other VAMC employees about older employees, which he suggests support a finding of pretext. The VA responds that the comments are stray comments that are insufficient to demonstrate pretext.

In general, stray or "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus." *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994). But Webster can show animus by demonstrating a nexus between the statements and the VA's adverse action. *See id.* And Webster can demonstrate such a nexus if the comments that resulted in his missed promotions were directed at him, his position, or a VAMC policy that resulted in the denial of the promotions. *See id.*

Webster first points to Officer Steven Anderson's testimony that Bell told Anderson that "[Bell] was hired by [VAMC Associate Director Robin] Korogi to clean house, and that he was going to get rid of all the deadwood and all the old

6

officers here because he had more guys at Hill Field that he wanted to get on."[5] App.

vol. 8, 1476. Webster also asserts that he testified that, in October 2009, he overheard

Bell tell a visitor from Hill Air Force Base that "[Bell] was going to promote some

more of his people as soon as he got rid of some of the older officers." Aplt. Add.

115.

While Webster argues that these comments show an age bias and therefore

support a finding of pretext, Anderson himself testified that he believed Bell's

comment was referring to officers who were in the department when he arrived as

chief—not to officers' ages. Anderson also testified that Webster was the only one

who interpreted the comments to refer to age instead of officers who had been at the

VAMC for a long time.

Moreover, even if we extend to Webster the benefit of an inference no one else

understood, Webster fails to show that Bell's comments were directed at him, his

position, or a VAMC policy that resulted in the denial of the promotions. Thus, these

statements don't demonstrate the necessary causal nexus. *See Rea*, 29 F.3d at 1457.

Webster further argues that the only reason Bell didn't terminate Webster was

because Webster and others complained about Bell, thus "thwart[ing]" his efforts.

Rep. Br. 7. But Webster relies only on speculation in reaching this conclusion. Thus,

---

[5] Webster also points to an unauthenticated email that was purportedly sent by Officer Tony Auriemma to EEO Investigator James Itamura. In the email, Auriemma recalled Bell indicating "that he wanted all the older Officers out of the office and [wanted] to replace them with new hires from security forces at Hill [Air Force Base]." Aplt. Br. 8 (quoting App. vol. 5, 868). Even if this email were admissible, it doesn't show pretext because Webster fails to show a nexus between Bell's comment and Webster's missed promotions.

Webster's theory doesn't support a finding of pretext. *See Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (noting that speculation is insufficient to support a causal nexus).

Webster also points to a comment made by Lieutenant Wayne Vouvalis, who participated on both panels for Webster's timely missed promotions. Officer Thomas Benincosa testified that Vouvalis told Benincosa that he "saw an old man [meaning Officer Auriemma] do a better job than [Benincosa]" at the firing range. Aplt. Add. 44; *see also* App. vol. 13, 1036. Webster argues that this comment suggests that Vouvalis is biased against older officers. But again, Webster fails to show how this comment relates to him, his position, or a VAMC policy to not promote older officers to leadership positions. We disagree that this single comment supports a finding that Vouvalis is biased against older officers applying for leadership positions. *See Rea*, 29 F.3d at 1457. Therefore, we reject Webster's argument that Vouvalis' comment supports a finding of pretext.

Next, Webster points to evidence in the record of several statements Korogi made. First, Bell heard Korogi describe three men over age 59 as "worthless," and describe Webster as "her own personal little piggy." Aplt. Br. 44. But as the VAMC points out, Korogi wasn't the decision-maker with respect to the relevant adverse actions, and Webster doesn't allege Korogi took any discriminatory action against him. Further, Bell testified that Korogi's comments didn't influence his decisions regarding Webster. Therefore, Webster offers no evidence showing a connection between Korogi's statements and the VAMC's decisions not to promote him.

Because Webster fails to establish a nexus between any of these comments and Webster's missed promotions, we conclude that they are stray comments insufficient to support a finding of pretext.[6]

**B**

Webster also argues that several instances of alleged retaliation against him provide support for his theory that Bell and other VAMC officials "put into play a scheme to not only replace older officers with younger officers, but to prevent officers [who resisted this plan] from engaging in protected activities." Aplt. Br. 45. We reject this argument for two reasons. First, Webster only speculates that Bell concocted such a scheme. Second, and more importantly, Webster doesn't demonstrate that the alleged retaliation was motivated by involvement in protected EEO activity. Thus, it can't support Webster's retaliation claim. *See Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (noting that actionable Title VII retaliation claims must be prompted by employee's opposition to discrimination prohibited by Title VII). Therefore, we reject Webster's argument that the alleged retaliation in response to activities that are not related to Title VII or the ADEA

---

[6] Webster also points to a "Report of Contact" which appears on its face to be a partially completed, unsigned report depicting an unidentified individual's conversation with Officer Tressa Jordan. App. vol. 4, 625-26. But Webster fails to show that the report or the statements within are admissible, and the comments within appear to be inadmissible hearsay. Accordingly, we will not consider it. *See Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995) (noting that, although a nonmoving party on summary judgment doesn't need to produce evidence in a form that's admissible at trial, the substance of the evidence must be admissible; therefore, hearsay testimony inadmissible at trial and unsubstantiated affidavits are insufficient to oppose summary judgment motion).

supports his claims before us.

## C

In attempting to demonstrate pretext for his retaliation claim, Webster also points to the timing of Zumwalt's EEO complaint, combined with comments Korogi made. Citing to a cryptic, heavily redacted email string, Webster states that 11 days after Zumwalt filed his EEO complaint in June 2009, Korogi ordered Bell—the individual who made the ultimate decision to deny Webster the promotions at issue— to start "documentation now" and to investigate Webster as "an option." App. vol. 7, 1397-99.

Webster seems to imply that because (1) Korogi's email closely followed the filing of Zumwalt's EEO complaint and (2) Webster ultimately participated in Zumwalt's EEO proceeding, Korogi's comments must have been motivated by that participation. And this, Webster seems to speculate, affected Bell's promotion decisions. But the EEO investigator didn't interview Webster regarding Zumwalt's complaint until October 29, 2009—months after Korogi sent the email that Webster relies on. And Webster points to no evidence that Bell knew at the time Korogi sent the email that the EEO investigator would eventually interview Webster. Thus, this evidence fails to support a finding of pretext.

## D

Next, Webster argues that the VAMC didn't follow its policies and procedures in connection with his timely missed-promotion claims related to the Lead Police Officer and Supervisory Police Officer positions. An agency's failure to follow its

10

policies or procedures may be relevant to a discrimination claim if there are "disturbing procedural irregularities" or "deviations from normal company procedure." *Conroy v. Vilsack*, 707 F.3d 1163, 1176 (10th Cir. 2013).

Webster first argues that Bell improperly influenced panel members and applicants related to the two promotions at issue. Webster generally argues that Bell "blackballed and ostracized" Webster by, among other things, "telling other officers that he was a 'bad apple,'" and that they shouldn't associate with him. Aplt. Br. 48-49. But Webster points to nothing indicating that Bell's comments had anything to do with Webster's age or involvement in protected activities. And while Webster suggests that Bell made people write false statements about Webster, Webster doesn't connect this to his missed promotions. As the VA argues, Webster cites to no testimony from any of the interview panel members suggesting that Bell influenced their evaluations of the candidates.[7] Thus, Webster simply hasn't discredited the employer's nondiscriminatory reasons for failing to promote him. Nor has Webster shown that Bell had any influence on the interview panels. Without this, Webster's claims don't rise above the level of speculation, which is insufficient to demonstrate pretext.

---

[7] Webster states that Bell gave the panel members "instructions on how the panel would operate." Aplt. Reply Br. 14. But one of Webster's citations to the appellate record only indicates that the human resources department gave Bell ultimate decision-making authority, not that he dictated how the panel would operate. And the other citation Webster provides is to material that isn't part of the appellate record. Because Webster fails to provide factual support for his assertion on this point, we don't consider it. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 826, 840 (10th Cir. 2005) ("[We] cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.").

Webster next contends that the VAMC cancelled the announcement for the Lead Officer position because Webster was the sole applicant, and then reopened the vacancy when Webster revealed that he was moving to the Seattle VAMC. In support, he points out that Tammy Ice, a former member of the VAMC's human resources department, testified she couldn't recall the specific reason for cancelling that specific position. But Ice also testified that announcements can be cancelled for a variety of reasons, including budget issues or personnel needs. Moreover, Ice recalled that when the Lead Officer position reopened, the human resources department determined Webster was qualified and the VAMC interviewed him for the position. Thus, Webster's contentions regarding the basis for the VAMC's decision to cancel and reopen the vacancy is based solely on speculation.

Nevertheless, Webster maintains that "the timing of these events" and "Webster's personal knowledge of the promotion process . . . endows this evidence with probative weight." Rep. Br. 16. In support, Webster points to a declaration in which he stated that, "[a]s soon as [he] notified management that he had been offered a job in the Seattle VAMC, the vacancy was re-opened . . . and Officer Hess was given the promotion." Aplt. Add. 85. But this allegation lacks sufficient specificity to prove pretext. For instance, Webster fails to provide the dates on which (1) he notified management of the position in Seattle and (2) the VAMC reopened its position. Instead, Webster points only to evidence that the VAMC canceled the position on November 6, 2009, and that Webster subsequently transferred to the Seattle VAMC on January 3, 2010. In other words, Webster points to no evidence

12

establishing when he informed the relevant VAMC officials, including Bell, that he was planning to transfer. Moreover, as noted above, when the VAMC reopened the position, it determined Webster was qualified and interviewed him. Without more explanation, we can't say that the timing here supports a finding of pretext.

Webster also argues that the VAMC failed to follow VA policy during the application process for the Supervisory Police Officer position. Webster argues that he was qualified for the position, but the VAMC didn't interview him for it. Webster appears to suggest that because he was qualified for the position and Bell interviewed some of the candidates, Bell was required to interview him.

But Webster's argument ignores a component of the VA's policy. As Ice explained, when a position is advertised, the VAMC issues a certificate "for each applicant or group of applicants who qualify in each eligibility category." App. vol. 1, 184-85. Once the certificates are issued, the selecting official can make a selection without interviewing the eligible candidates, or the official can conduct interviews before making a selection. If the selecting official (here, Bell) decides to conduct interviews, the official isn't required to interview all of the candidates. But, if the selecting official interviews any applicant on a particular eligibility certificate, the official is required to interview all candidates listed on that certificate.

Here, the interview panel for the Supervisory Police Officer position interviewed all of the candidates listed on the certificate for candidates who qualified under the Veterans Employment Opportunities Act. But Webster wasn't listed on that specific certificate. Instead, he was listed on a separate certificate. Thus, because

13

Webster wasn't identified on the same certificate as the candidates who Bell interviewed, Bell's failure to interview Webster did not deviate from agency policy.

**E**

Webster also argues that we should consider whether the VAMC followed VA policies and procedures in connection with his *untimely* missed-promotion claims in determining whether Webster has provided evidence of pretext with respect to his two *timely* missed-promotion claims. But as the VA points out, Webster fails to demonstrate that the VAMC violated VA procedures with respect to the untimely missed-promotion claims. Likewise, he fails to explain how the VAMC's violation of VA procedures with respect to his untimely non-selection claims is relevant to support a finding of pretext regarding his timely claims. Accordingly, we reject this argument.

**F**

Finally, Webster points to what he characterizes as "VA[MC] personnel's dishonesty and inferior qualifications," which he argues "defeat [the VAMC's] justification for its failure to promote [him]. Aplt. Reply Br. 22 (emphasis omitted).

In support, Webster first suggests that evidence of Bell's "aggressive" character supports his claim of pretext. Webster states that the VAMC eventually removed Bell from his position as Chief and cites a report describing how Bell promoted a culture of fear and intimidation.

The VA concedes that Bell's management style was "aggressive" and contributed to an unacceptable working environment. Aplee. Br. 44. But the VA

14

further acknowledges that Bell was aggressive and intimidating with many employees, not just Webster. Webster suggests that such evidence nevertheless demonstrates that Bell wasn't truthful and that the reasons Bell gave for not promoting him are "unworthy of credence." Aplt. Reply Br. 22 (quoting *Doyle v. Nordam Grp., Inc.*, 492 F. App'x 846, 849 (10th Cir. 2012) (unpublished)). But Webster fails to explain how Bell's aggressive tendencies might demonstrate that Bell was untruthful.

Next, Webster argues that Bell forced a number of people to write false statements about Webster. Webster points to what appears to be the unsworn statement of Tressa Jordan, saying that Bell asked her to write a statement against Webster and to exaggerate "any little story" so Webster "would appear to be extremely paranoid or violent." App. vol. 4, 655. Likewise, Webster asserts that Bell ordered Zumwalt to write a statement against Webster and told Zumwalt what to write. But Jordan's statement and Zumwalt's affidavit explain that these events occurred in March 2009, months before Webster engaged in any activity protected under Title VII or the ADEA. Thus, the alleged falsification could not have been retaliation for something that occurred months later.

Webster also alleges that Bell ordered Anderson and Eddie Fisher to write false statements indicating that Webster engaged in a workplace violence incident. But Webster's citations to the record fail to provide a timeframe that would support a finding of pretext, and the VAMC never suggested that Webster wasn't promoted because of his involvement in a workplace violence incident.

15

Webster also points to an email presumably authored by Sergeant Montoya in August 2010, in which Montoya claims that "[o]n several occasions Bell asked Officers including [Montoya] to write a report of contact (ROC) against Officer Webster and would even state what he wanted included in the report." App. vol. 4, 622. Montoya's email fails to reference any time frame for the "several occasions." *Id.* Further, the email isn't an authenticated document and doesn't appear to fall under a hearsay exception. *See Thomas v. IBM,* 48 F.3d 478, 485 (10th Cir. 1995). Thus, the email isn't admissible evidence of pretext.

Finally, Webster points out that Benincosa testified that Bell ordered Benincosa to write a statement against Webster because Webster and Zumwalt were "coming after [Benincosa]." Aplt. Reply Br. 21. It is unclear, and Webster fails to explain, how this testimony provides any support for his retaliation and discrimination claims.

In sum, the evidence relating to Bell's purported actions in advising others to write false statements about Webster fails to support a finding of pretext for his claims, because that evidence is either inadmissible or fails to show Bell made such requests after Webster engaged in protected activity.

In addition to citing Bell's aggressive personality and purported machinations to develop false statements about Webster, Webster also suggests that the VAMC's treatment of Ronald Beard supports a finding that the VAMC's reasons for not promoting Webster were pretext. The VAMC hired Beard in 2006 and ultimately promoted him to acting chief of police in 2009. Webster claims Beard was "similarly

16

situated" to Webster because they both lacked interpersonal skills. Webster points to a number of incidents, ostensibly to show Beard's flawed interpersonal skills. And he notes that other people described Beard as "forceful" and "angry." *Id.* at 12. But Webster points to no evidence indicating that Bell, the decision-maker in Webster's case, promoted Beard above older, more qualified applicants for any position. Without such evidence, Webster fails to show how Beard's flawed interpersonal skills support a finding of pretext here. *See Martinez v. Wyo. Dep't of Family Servs.*, 218 F.3d 1133, 1140 (10th Cir. 2000) (rejecting plaintiff's discrimination claim because he failed to produce evidence that he was a "better qualified candidate" than those hired).

\*     \*     \*

Because Webster fails to establish pretext for his discrimination or retaliation claims, we affirm the district court's order granting the VA's motion for summary judgment.

Entered for the Court

Nancy L. Moritz
Circuit Judge

17