FILED
United States Court of Appeals
Tenth Circuit

April 4, 2017

Elisabeth A. Shumaker
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ROOSEVELT RICO DAHDA,

     Defendant - Appellant.

No. 15-3237

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:12-CR-20083-KHV-2)**
_____

Mark L. Bennett, Jr., Bennett & Hendrix, LLP, Topeka, Kansas, for Defendant-Appellant.

Carrie N. Capwell, Assistant United States Attorney (Thomas E. Beall, Acting United States Attorney, with her on the brief), Office of the United States Attorney, Kansas City, Kansas, for Plaintiff-Appellee.
_____

Before **LUCERO** and **BACHARACH**, Circuit Judges.[*]
_____

**BACHARACH**, Circuit Judge.

_____

[*]    The Honorable Neil Gorsuch participated in oral argument, but he is not participating in the decision. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in deciding the appeal. _See_ 28 U.S.C. § 46(d); _see also United States v. Wiles_, 106 F.3d 1516, 1516, at n* (10th Cir. 1997) (noting that this court allows remaining panel judges to act as a quorum to decide an appeal). In this case, the two remaining panel members are in agreement.

_____

Mr. Roosevelt Dahda and 42 others faced criminal charges involving the operation of a marijuana-distribution network centered in Kansas. Roosevelt[1] was convicted on ten counts, and the district court sentenced him to 201 months' imprisonment and ordered forfeiture in the amount of $16,985,250. On appeal, Roosevelt raises seven challenges to the convictions and sentence:

1. The evidence was insufficient to prove the conspiracy charged in count one, which involved 1,000 kilograms or more of marijuana.

2. There was an unconstitutional variance between the single, large conspiracy charged in count one and the trial evidence, which showed numerous smaller conspiracies.

3. The district court erred in denying Roosevelt's motion to suppress wiretap evidence.

4. The sentence of 201 months' imprisonment exceeded the statutory maximum because the jury did not make a specific finding on the quantity of marijuana involved in the conspiracy.

5. The district court erred in setting Roosevelt's base-offense level by miscalculating the amount of marijuana attributed to Roosevelt.

6. The district court's upward variance of 33 months was substantively unreasonable.

7. The district court erred in entering a forfeiture judgment.

_____

[1] One of the co-defendants was Roosevelt's brother, Mr. Los Dahda. To avoid confusion, we refer to Mr. Roosevelt Dahda and Mr. Los Dahda by their first names.

2

We reject the challenges in 1-4 and 6-7. But we agree with the fifth challenge, concluding that the district court miscalculated the amount of marijuana attributed to Roosevelt. Based on these conclusions, we affirm Roosevelt's convictions but remand for resentencing.

## I.    Sufficiency of the Evidence

Count one charged Roosevelt with a conspiracy involving 1,000 kilograms or more of marijuana. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), 846, 856 (2012); 18 U.S.C. § 2.[2] Roosevelt argues that the government failed to prove that he had joined the large conspiracy charged in count one. According to Roosevelt, the evidence established only a number of smaller conspiracies.

To decide whether the evidence of guilt sufficed, we engage in de novo review, considering the evidence in the light most favorable to the government to determine whether any rational jury could have found guilt beyond a reasonable doubt. *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006). We consider the direct and circumstantial evidence but do not balance conflicting evidence or consider the witnesses' credibility. *Id.*

To prove a conspiracy, the government must show that (1) two or more persons agreed to violate the law, (2) the defendant knew the

---

[2]    Count one also charged Roosevelt with a conspiracy involving cocaine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II), 846, 856; 18 U.S.C. § 2. But the cocaine component of the conspiracy was not submitted to the jury.

3

essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged co-conspirators were interdependent. *United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009). Determining the existence of a single conspiracy involves a question of fact for the jury. *United States v. Dickey*, 736 F.2d 571, 581 (10th Cir. 1984). This question turns on the existence of a common, illicit goal. *Id.* at 582.

Based on the trial evidence, we concluded in *United States v. Los Dahda* that the evidence was sufficient to permit the finding of a single conspiracy of 1,000 kilograms or more of marijuana.[3] ___ F.3d ___, No. 15-3236, slip op., Part II(A) (10th Cir. Apr. 4, 2017). Applying the same reasoning here, we reject Roosevelt's argument that the evidence established a number of smaller conspiracies rather than a single large conspiracy.

The remaining question is whether the evidence was sufficient to show that Roosevelt joined the large conspiracy involving 1,000 kilograms

---

[3] Roosevelt raises one argument not raised in Los's appeal: that Mr. Park and Mr. Swift "may have been in direct competition with [Mr. Bauman] at some points." Appellant's Opening Br. at 34. In support, Roosevelt points to Mr. Park's testimony that an individual working with Mr. Bauman might have stolen marijuana from Mr. Park's store. R. vol. 3, at 1453. This testimony is not dispositive, and Mr. Bauman and Mr. Swift testified that they had never competed with one another. R. vol. 3, at 1182, 2351. Thus, we reject Roosevelt's argument.

or more of marijuana. We conclude that the evidence was sufficient based on six categories of evidence:

1.  Roosevelt drove a truck with a hidden compartment, which was used by the group to transport drugs and cash. R. vol. 1, at 406-08; R. supp. vol. 4, Exhibit 704-05. When Roosevelt drove the truck, the hidden compartment apparently contained cash. Once Roosevelt arrived in California, he was to open the compartment to remove the cash. *Id.*

2.  Roosevelt relayed a request from Mr. Park for Los to travel to Northern California to inspect some marijuana grow operations. R. vol. 2, at 575; R. supp. vol. 4, Exhibit 823. In relaying this request, Roosevelt commented that he had seen some of the marijuana and that it "look[ed] very lovely." R. supp. vol. 4, Exhibit 823.

3.  Roosevelt sent boxes through the group's shipping operation to Mr. Justin Pickel, who grew marijuana in California. R. vol. 1, at 474; R. supp. vol. 4, Exhibit 753. Roosevelt also agreed to send money to Mr. Pickel. R. vol. 2, at 547-48; R. supp. vol. 4, Exhibit 794.

4.  Roosevelt went to the group's Kansas warehouse to pick up marijuana. R. vol. 3, at 1457-58.

5.  In Kansas, Roosevelt sold pounds of marijuana that had been sent from California, R. vol. 3 at 1231-50, 1260-62, 1293-95, 1606-07, 1612; R. supp. vol. 4, Exhibits 738, 767, 772-74, 853-54.

6.  The day after the police seized approximately 37 pounds of marijuana from Mr. Pickel, Roosevelt and Los discussed the fact that they had lost "half of what [they] [had] worked for" and that they had to be cautious when "bring[ing] the rest of this back." R. supp. vol. 4, Exhibit 860.

Crediting this evidence and viewing it favorably to the government, we conclude that a rational fact-finder could conclude beyond a reasonable doubt that Roosevelt knowingly and voluntarily participated in the large

conspiracy. This conclusion would have remained valid even if Roosevelt had occupied a relatively minor role in the conspiracy. *See United States v. Caro*, 965 F.2d 1548, 1556 (10th Cir. 1992) ("[A] defendant's participation in the conspiracy may be slight and may be inferred from the defendant's actions so long as the evidence establishes a connection to the conspiracy beyond a reasonable doubt."). In *United States v. Anaya*, for instance, the defendant participated in a drug conspiracy only by installing hidden compartments in vehicles. 727 F.3d 1043, 1051 (10th Cir. 2013). We held that the evidence was sufficient for conviction on a conspiracy charge because the compartments had been insulated to mask smells, the defendant had seen $800,000 in cash in one of the compartments, the compartments' sizes had been measured in kilos, the defendant and his customers had communicated in code, and the defendant had been warned not to discuss the compartments. *Id.*

Similarly, Roosevelt might not have performed a major role in the conspiracy. But the trial evidence was sufficient to show that he (1) had agreed to violate the law, (2) had known that the essential objective of the conspiracy was transportation of marijuana from California to Kansas for resale in Kansas, (3) had knowingly and voluntarily participated in the conspiracy, and (4) had facilitated the conspiracy's objective.

Roosevelt counters that the government did not prove interdependence because he was unknown to several co-conspirators and

the conspiracy could have operated without him. These arguments overstate what the government had to prove. The government did not need to prove

- that Roosevelt knew or had connections with all other members of the conspiracy or

- that Roosevelt was indispensable to the conspiracy.

*See United States v. Foy*, 641 F.3d 455, 465 (10th Cir. 2011). "[R]ather, it is sufficient that [Roosevelt] was an operational link within [the conspiracy]." *United States v Cornelius*, 696 F.3d 1307, 1318 (10th Cir. 2012). In light of the evidence, we conclude that the evidence sufficed for a finding that Roosevelt had at least been "an operational link" within the conspiracy. *Id.*

\* \* \*

Viewed in the light most favorable to the government, the evidence was sufficient to establish (1) the existence of the single conspiracy charged in count one and (2) Roosevelt's participation in that conspiracy. We therefore reject Roosevelt's challenge to the sufficiency of the evidence on count one.

## II. Variance

Roosevelt also urges a prejudicial variance between the conduct charged in count one and the trial evidence. According to Roosevelt, the

7

evidence established only smaller conspiracies rather than a single, large conspiracy.[4]

"In the context of a conspiracy conviction, we treat a variance claim as a challenge to the sufficiency of the evidence establishing that each defendant was a member of the same conspiracy." *United States v. Gallegos*, 784 F.3d 1356, 1362 (10th Cir. 2015). Viewing the challenge in this manner, we engage in de novo review. *United States v. Caldwell*, 589 F.3d 1323, 1328 (10th Cir. 2009).

Applying de novo review, we rejected the same challenge by Roosevelt's co-defendant in *United States v. Los Dahda*, ___ F.3d ___, No. 15-3236, slip op., Part III (10th Cir. Apr. 4, 2017). Based on that opinion, we reject Roosevelt's assertion of a variance between count one and the trial evidence.

## III. The Wiretap Authorization Orders

Much of the evidence introduced against Roosevelt was obtained through wiretaps of cell phones used by Roosevelt and four others. The wiretaps took place during the six months preceding Roosevelt's arrest and

---

[4] Roosevelt made a different variance argument in district court. There, Roosevelt argued that a variance had occurred because (1) the charge involved both cocaine and marijuana and (2) the trial evidence proved only a marijuana conspiracy. The government argues that we should apply plain-error review to the new variance argument raised on appeal. Because we would affirm even under de novo review, we do not consider whether the plain-error standard applies. *See United States v. Vasquez-Alcarez*, 647 F.3d 973, 977 (10th Cir. 2011) (permitting us to assume, for the sake of argument, that an argument was not forfeited).

had been authorized by the U.S. District Court for the District of Kansas. Prior to trial, Roosevelt moved to suppress the intercepted communications, arguing that the wiretap orders were facially insufficient because they had exceeded the district court's territorial jurisdiction.

We concluded in *United States v. Los Dahda* that suppression was not warranted even though the orders had been facially deficient. ___ F.3d ___, No. 15-3236, slip op., Part IV (10th Cir. Apr. 4, 2017). Based on our opinion in *Los Dahda*, we reject Roosevelt's challenge to the denial of his motion to suppress.

## IV. Sentencing Issues

Roosevelt was sentenced to prison for a total of 201 months. In calculating the sentence, the district court determined that Roosevelt was responsible for 1,600 pounds (725.7 kilograms) of marijuana, resulting in a base-offense level of 28. *See* U.S.S.G. § 2D1.1 (2014). With adjustments and criminal history, the guideline range was 135 to 168 months. The district court then varied upward by 33 months on the ground that Roosevelt had manipulated a co-defendant into not cooperating with the government.

Roosevelt urges a remand for resentencing based on three arguments:

1. The sentence exceeded the statutory maximum because the jury did not specifically find the quantity of marijuana involved in the conspiracy.

9

2.     The district court clearly erred in finding that Roosevelt was responsible for 1,600 pounds of marijuana.

3.     The upward variance was substantively unreasonable because Roosevelt did not manipulate the co-defendant.

We reject the first and third arguments but agree with the second. Because the district court erred in attributing 1,600 pounds to Roosevelt, we remand for resentencing.

## A.     Jury Finding on Marijuana Quantity

As noted, Roosevelt was found guilty on count one, participation in a conspiracy involving 1,000 kilograms or more of marijuana. Roosevelt argues that the prison sentence of 201 months on count one exceeds the statutory maximum because the jury did not specifically find the quantity of marijuana involved in the conspiracy.

The penalties for violating 21 U.S.C. § 841(a) are set forth in subsection (b). The severity of the penalty turns on the quantity of drugs involved in the crime. Subsection (b)(1)(D) provides a ceiling of five years' imprisonment for less than 50 kilograms of marijuana. 21 U.S.C. § 841 (b)(1)(D). Subsection (b)(1)(C) provides a maximum sentence of 20 years' imprisonment when no specific quantity is charged. And subsections (b)(1)(A) and (B) provide even higher maximum sentences and mandatory minimums, depending on the type and quantity of the substance. In cases involving at least 1,000 kilograms or more of marijuana, subsection

10

(b)(1)(A) imposes a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A)(vii).

Roosevelt was sentenced under subsection (b)(1)(C),[5] but he argues that he should have been sentenced under (b)(1)(D) because the verdict form had not included a specific finding on the marijuana quantity. But Roosevelt waived this argument in district court.

When the district court asked Roosevelt's attorney which subsection applied, the attorney responded:

> Your Honor, I would agree that (b)(1)(C) is the appropriate provision under Section 841 as regards to the defendant's sentencing range and that's because the jury did not find the quantity of drugs necessary to trigger any mandatory minimum that's based on quantity, and (b)(1)(A) and (b)(1)(B) are based on quantities. (b)(1)(C) states that for any substance under Schedule 1 or Schedule 2. It doesn't have a quantity.
>
> And I think there's case law in the Tenth Circuit that says that that provision applies in the absence of any quantity found by the jury. And so we would argue that (b)(1)(C) applies as the defendant's statutory range which has no mandatory minimum and has the maximum of 20 years.

R. vol. 3 at 2648-49.

The threshold issue is whether defense counsel's statement constitutes a waiver, which would arise if the statement had "invited" the alleged error. *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272

---

[5] Although Roosevelt was found guilty of participating in a conspiracy involving 1,000 kilograms or more of marijuana, the government agreed to waive the ten-year mandatory minimum under § 841(b)(1)(A).

(10th Cir. 2007); *see also United States v. Olano*, 507 U.S. 725, 733 (1992) ("[W]aiver is the intentional relinquishment or abandonment of a known right." (citations & internal quotation marks omitted)). We conclude that defense counsel waived the present argument.

When asked which statutory provision should apply, defense counsel stated that Roosevelt should be sentenced under § 841(b)(1)(C); and the district court relied on this representation. These circumstances constitute invited error. *See United States v. Teague*, 443 F.3d 1310, 1316 (10th Cir. 2006) (rejecting the defendant's challenge to the conditions of his supervised release because he "*proposed* the very limitation . . . to which [he] now objects").

Roosevelt disagrees, contending that the discussion at sentencing focused on whether a statutory mandatory minimum could be imposed given the lack of a specific finding on the marijuana quantity. The issue on appeal, he explains, is whether the sentence exceeded the statutory maximum given the lack of a jury finding on quantity. We disagree, for Roosevelt expressly agreed that the statutory maximum was provided in (b)(1)(C).

But even if Roosevelt had not invited error in district court, we would reject the argument under the plain-error standard. We find plain error when (1) the ruling constitutes error, (2) the error is plain, (3) the error affects substantial rights, and (4) the error seriously affects the

12

fairness, integrity, or public reputation of judicial proceedings. *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007).

In *United States v. Los Dahda*, we addressed whether the lack of an express jury finding on quantity required resentencing of Los under 21 U.S.C. § 841(b)(1)(D), rather than § 841(b)(1)(C). ___ F.3d ___, No. 15-3236, slip op., Part V (10th Cir. Apr. 4, 2017). Under de novo review, we concluded that the answer was "no" because the quantity of 1,000 kilograms constituted an element of the charged conspiracy. *Id.*

The same reasoning applies here. Using the same instructions and verdict form described in *Los Dahda*, the jury found Roosevelt guilty on count one, which required the jury to find that the conspiracy involved 1,000 kilograms or more of marijuana. Therefore, Roosevelt's sentence under 21 U.S.C. § 841(b)(1)(C) did not constitute error, much less plain error. *See id*.

In sum, Roosevelt waived his challenge to the statutory maximum. But even if this issue had not been waived, application of § 841(b)(1)(C) would not have constituted plain error.

B.     **Quantity of Marijuana Attributable to Roosevelt**

Roosevelt contends that in calculating his base-offense level, the district court erroneously calculated the quantity of drugs attributable to him. The district court adopted the presentence report's recommendation, which attributed 1,600 pounds (725.7 kilograms) of marijuana to

13

Roosevelt. This quantity involved an estimate of the weight of marijuana shipped from California to Kansas between December 2010 and May 2012.[6] During this time-period, the presentence report estimated that 20 pallets, each containing 80 pounds of marijuana, had been shipped from California to Kansas—for a total of 1,600 pounds. R. vol. 4, at 49-50. The district court determined that this estimate had been "reasonable and reliable and conservative," resulting in a base-offense level of 28. R. vol. 3, at 2668.

Roosevelt argues that (1) he was pinned with marijuana shipments that he could not have reasonably foreseen and (2) even if the shipments had been reasonably foreseeable, the district court clearly erred in estimating that each pallet contained 80 pounds of marijuana.[7] We reject

---

[6]    These dates were selected because Roosevelt had been in prison through November 2010 and was arrested on the present charges in May 2012.

[7]    At oral argument, Roosevelt argued for the first time that the jury should have determined the quantity of marijuana used to calculate the base-offense level. But "[i]ssues raised for the first time at oral argument are considered waived." *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998).

Even if we were to consider the argument, it would fail on the merits. The jury's findings on count one resulted in a statutory maximum of 20 years' imprisonment. *See* Part IV(A), above. If the drug quantity found by the sentencing judge "did not cause [the defendant's] sentence to exceed the statutory maximum, *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] [would] not require that the jury make findings on quantity." *United States v. Wilson*, 244 F.3d 1208, 1215 (10th Cir. 2001). Here, the 1,600 pounds of marijuana attributed to Roosevelt did not cause his sentence to exceed the statutory maximum that would otherwise have existed. Accordingly, there was no *Apprendi* violation.

14

Roosevelt's first argument but agree that the court clearly erred in estimating that each pallet contained 80 pounds of marijuana. Accordingly, we remand for resentencing.

### 1. Reasonable Foreseeability

A defendant is accountable for all reasonably foreseeable drug quantities that were within the scope of the jointly undertaken criminal activity. U.S.S.G. § 1B1.3 cmt. 2 (2014).

"We review the district court's factual finding concerning the quantity of drugs for which a defendant may be held accountable under a clearly erroneous standard." *United States v. Ortiz*, 993 F.2d 204, 209 (10th Cir. 1993). The finding is clearly erroneous only if it is implausible or impermissible based on the entire record. *United States v. Torres*, 53 F.3d 1129, 1144 (10th Cir. 1995). In examining the record, we must determine whether the district court could reasonably have found that the government had satisfied its burden on foreseeability by a preponderance of the evidence. *United States v. Roberts*, 14 F.3d 502, 521 (10th Cir. 1993).

Roosevelt contends that he cannot be held responsible for the first five shipments listed in the presentence report—representing 1,040 pounds of marijuana—because (1) these shipments were received by Mr. Bauman and (2) Roosevelt did not work with Mr. Bauman. As previously noted, Roosevelt's lack of a direct connection with Mr. Bauman would not

15

preclude responsibility for the five shipments. *See* Part I, above. And the evidence showed that beginning in early 2011, Roosevelt was selling marijuana in Kansas that had been acquired in California. R. vol. 3, at 1231-50, 1260-62.

Roosevelt also argues that he was not personally linked to any of the shipments. But Roosevelt could be responsible for shipments even if he was not personally linked to them. "Section 1B1.3(a)(1)(B) makes clear that in calculating a defendant's offense level under the Guidelines, a defendant must be held accountable for the conduct of his co-conspirators, including conduct in which the defendant did not personally participate, as long as the conduct was within the scope of the jointly undertaken criminal activity and was reasonably foreseeable to the defendant." *United States v. Sells*, 541 F.3d 1227, 1235 (10th Cir. 2008).

In *United States v. Williams*, we upheld a defendant's base-offense level predicated on the entire quantity of drugs involved in the conspiracy. 897 F.2d 1034, 1041 (10th Cir. 1990). We agreed with the sentencing court that "at a minimum" the defendant "had knowledge of the criminal enterprise" and participated significantly (though only episodically). *Id.* Thus, the defendant "knew or should have known" of the total quantity of drugs involved in the conspiracy. *Id.*

Our explanation in *Williams* is also applicable here. Roosevelt was aware of the drug distribution network and participated in that network.

This participation included driving cash to California for someone in the group to buy marijuana, examining a field of marijuana, picking up marijuana shipments at the group's Kansas warehouse, and selling marijuana in Kansas. *See* Part I, above. Nonetheless, the district court did not pin Roosevelt with all of the drugs involved in the conspiracy; instead, the court excluded marijuana that had been dealt while Roosevelt was in prison. Thus, the district court did not clearly err in finding that the marijuana shipments had been reasonably foreseeable and within the scope of the criminal activity undertaken by Roosevelt.

## 2. Estimate of Marijuana Quantity

Roosevelt also argues that the district court clearly erred in estimating that each of the 20 shipped pallets contained 80 pounds of marijuana. We agree with Roosevelt.

The government bears the burden to prove drug quantity through a preponderance of the evidence. *United States v. Ortiz*, 993 F.2d 204, 209 (10th Cir. 1993). The base-offense level may consist of an estimate if it contains some record support and is based on information bearing "minimum indicia of reliability." *United States v. Garcia*, 994 F.2d 1499, 1508 (10th Cir.1993); *United States v. Coleman*, 7 F.3d 1500, 1504 (10th Cir. 1993).

No such indicia of reliability are present here. The quantities in the pallets varied. For example, Mr. Bauman testified that each pallet had

17

contained between "five or ten pounds to eighty pounds" of marijuana. R. vol 3, at 2251. Mr. Bauman and Mr. Swift remarked that toward the end of the conspiracy, each pallet usually contained 80 pounds, with Mr. Bauman adding that there "could have been" times when the pallets contained more than 80 pounds. R. vol. 3, at 1067, 2252. But this testimony does not support a finding that the pallets contained an average of 80 pounds. In fact, the presentence report states that one of the shipments attributed to Roosevelt had contained only 33 pounds of marijuana. R. vol. 4 at 49.

The government cites no evidence showing that the district court fairly attributed 80 pounds, rather than 5-10 pounds, to the shipments used to calculate Roosevelt's base-offense level. Nor is there any way to determine what time period Mr. Bauman and Mr. Swift were referencing when they testified that toward the end of the conspiracy, the pallets usually contained 80 pounds.

In *United States v. Roberts*, we held that an estimate entailed clear error because the district court had attempted to extrapolate drug quantities from one time period to another. 14 F.3d 502, 521 (10th Cir. 1993). There one defendant admitted that he had bought and redistributed 150-200 pounds of methamphetamine between 1987 and February 1991. *Id.* at 520. The district court used this figure to estimate that the defendant was responsible for distributing 60 pounds of methamphetamine between January 1, 1989, and February 26, 1991. *Id.* at 519-20. We rejected this

18

estimate, concluding that the district court had "ground[ed] its conclusion in midair" because no reasonable basis existed to extrapolate the finding from the 150-200 pounds that the defendant had admitted. *Id.* at 521.

*United States v. Richards* is also instructive. 27 F.3d 465 (10th Cir. 1994). There a witness testified that she had bought drugs from the defendant in amounts varying from week to week, "sometimes one or two grams and sometimes four or five." *Id.* at 469. Law enforcement then used the maximum weekly quantity of five grams to estimate that the witness had purchased "80 grams, on the assumption that she [had] purchased five grams per week for sixteen weeks." *Id.* We concluded that this calculation was based on "insufficient minimally reliable evidence" because the testimony had been vague, conflicting, and unsupported by other evidence. *Id.*

Though Mr. Bauman and Mr. Swift are arguably more reliable than the witness in *Richards*, their testimony was also vague. Without a way to tie their testimony concerning the pallets of 80 pounds to the shipments attributed to Roosevelt, the testimony of Mr. Bauman and Mr. Swift was insufficient to attribute 1,600 pounds to Roosevelt.

The government argues that any error would be harmless because there was other evidence of marijuana attributable to Roosevelt. The burden falls on the government to demonstrate, by a preponderance of the

19

evidence, that the error did not affect Roosevelt's substantial rights. *United States v. Harrison*, 743 F.3d 760, 764 (10th Cir. 2014).

The government did not satisfy this burden. The government's argument on harmlessness consists of a single sentence, referring to 37 pounds and 200 marijuana plants seized from a co-conspirator. Under the guidelines, each marijuana plant counted as 100 grams. U.S.S.G. § 2D1.1 applic. note (E). Thus, the additional evidence would account for just over 81 pounds, which was only about 5% of the marijuana weight that the district court attributed to Roosevelt. Thus, the government's reliance on additional evidence would not take the district court's finding outside the realm of speculation. In these circumstances, we remand for the district court to reassess the quantity of marijuana attributable to Roosevelt.

### C.   Upward Variance

Though we remand to the district court for resentencing, we address Roosevelt's argument that the upward variance of 33 months was substantively unreasonable.[8]

---

[8]   The district court stated that it was departing upward from the guideline range, but Roosevelt characterizes the sentence as a variance. The government refers to the sentence as both a departure and a variance and seems to use the terms interchangeably. We conclude that the court actually applied a variance rather than a departure. The district court imposed the sentence based on the 18 U.S.C. § 3553(a) factors. When a court applies the § 3553(a) factors to impose a sentence outside the guideline range, the district court is applying a variance rather than a departure. *See United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1221-22 (10th Cir. 2008).

District courts enjoy broad discretion in sentencing, but sentences must be substantively reasonable. *United States v. Hanrahan*, 508 F.3d 962, 969 (10th Cir. 2007). Substantive reasonableness focuses on the length of the sentence and requires that sentences be neither too long nor too short. *Id*.

We review substantive reasonableness under the abuse-of-discretion standard, which requires us to give substantial deference to the district court. *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009). The district court abuses that discretion when rendering a decision that is arbitrary, capricious, whimsical, or manifestly unreasonable. *Id*.

Roosevelt was sentenced to 201 months' imprisonment, 33 months above the upper end of his guideline range. The district court justified the variance on the ground that Roosevelt had pressured a co-defendant, Ms. Sadie Brown, into not cooperating with the government. Because Ms. Brown did not cooperate with the government, she did not receive a "safety-valve" adjustment. *See* 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). Without this adjustment, Ms. Brown obtained a sentence 12-33 months higher than she might otherwise have received.

Roosevelt argues that the district court lacked evidence to find manipulation of Ms. Brown. We reject this argument. The district court could reasonably rely on the evidence presented at Roosevelt's sentencing, combined with what the court had already known from Ms. Brown's

21

sentencing. *See United States v. Spears*, 197 F.3d 465, 471 (10th Cir. 1999).[9]

At Roosevelt's sentencing, the government produced two letters that Ms. Brown had received from Roosevelt. The first letter opens with "How is my favorite student?" and instructs Ms. Brown how to handle her criminal case. R. vol. 5, at 1. She was to try to withdraw her guilty plea, file a direct appeal based on ineffective legal assistance, and send a copy of correspondence about her case "home to [Roosevelt's mother]." *Id.* at 1. The letter adds that trying for the safety-valve adjustment now would not hurt anyone. *Id.* at 2. The second letter similarly tells Ms. Brown how to handle her sentencing and again says that her counsel provided ineffective assistance. Notably, Roosevelt sent these letters only after the end of his own criminal trial.

Upon receipt of these letters, Ms. Brown tried to qualify for the safety-valve adjustment. At her sentencing, the government contended that Ms. Brown was ineligible because she had not been truthful. Tr. of Sentencing Volume II at 30-32, *United States v. Brown*, No. 12-20083-03-

---

[9]    Our understanding of Ms. Brown's sentencing comes from our review of Ms. Brown's sentencing transcripts. *See* Tr. of Sentencing Volume II, *United States v. Brown*, No. 12-20083-03-KHV-3 (D. Kan. Mar. 9, 2015), ECF No. 1813; Tr. of Sentencing Volume III, *United States v. Brown*, No. 12-20083-03-KHV-3 (D. Kan. Mar. 12, 2015), ECF No. 1815. The same district judge presided over the criminal cases of both Roosevelt and Ms. Brown and relied partly on evidence from Ms. Brown's sentencing. Roosevelt does not question the district court's ability to rely on Ms. Brown's sentencing proceedings.

KHV-3 (D. Kan. Mar. 9, 2015), ECF No. 1813. Ms. Brown testified that she had provided information to the best of her ability and that she had decided to pursue the safety-valve adjustment only after obtaining permission from Roosevelt.

The government then called the case agent who had conducted the safety-valve interview. The case agent testified that Ms. Brown had not been forthcoming during her interview, adding that "during the course of the proffer examination, there [had been] statements made relative to the Dahdas['] manipulation of [Ms. Brown]" and that it had appeared that the Dahdas were continuing to communicate with Ms. Brown. *Id.* at 36-37. The case agent opined that during the safety-valve interview, there was discussion that the Dahdas had treated Ms. Brown "like a slave . . . ." *Id.* at 37.

After hearing this testimony, the district court continued the sentencing to give Ms. Brown a second opportunity to qualify for a safety-valve adjustment. At the continued hearing, the case agent testified that Ms. Brown had still not been completely truthful and had minimized the criminal activity of individuals related to Roosevelt. For instance, the case agent expressed the belief that Ms. Brown had minimized the involvement of co-defendant Nathan Wallace—Roosevelt's half-brother—who had yet to be sentenced. Tr. of Sentencing Volume III at 73, *United States v. Brown*, No. 12-20083-03-KHV-3 (D. Kan. Mar. 12, 2015), ECF No. 1815.

23

Ms. Brown explained that she had not pursued the safety-valve adjustment earlier because she had not wanted to testify against Los and Roosevelt. *Id.* at 87. Ultimately, the district court determined that Ms. Brown had failed to satisfy the requirements for a safety-valve adjustment. *Id.* at 84.

At Roosevelt's sentencing, the district court found that Roosevelt was "legally and morally responsible for [the] extra time that [Ms. Brown] [was] doing" and that a sentence within the guideline range would not "adequately take into account all of the relevant conduct here." R. vol. 3, at 2685-86. These findings were not clearly erroneous. Thus, we conclude that the district court (1) acted within its discretion in varying upward and (2) imposed a substantively reasonable sentence.

## V. Forfeiture

Roosevelt's final argument is that the district court erred in ordering forfeiture in the amount of $16,985,250. According to Roosevelt, the forfeiture order should be vacated for three reasons:

1.  The district court violated the federal rules by failing to enter a preliminary order of forfeiture.

2.  The district court lacked sufficient evidence for the amount of the forfeiture.

3.  The district court failed to specify the amount of the forfeiture.

We reject these arguments.

First, Roosevelt urges vacatur of the forfeiture order because the district court failed to enter a preliminary order of forfeiture as required by

24

Fed. R. Crim. P. 32.2(b). Roosevelt did not raise this argument in district court, and our review is limited to the plain-error standard. *United States v. Wright*, ___ F.3d ___, No. 15-5090, 2017 WL 677485, at *4 (10th Cir. Feb. 21, 2017). We find plain error when (1) the ruling is erroneous, (2) the error is plain, (3) the error affects substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007); *see* Part IV(A) above.

Rule 32.2 provides that upon a finding that property is subject to forfeiture, the court must enter a preliminary forfeiture order "sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final . . . ." Fed. R. Crim. P. 32.2(b)(2)(A)-(B), 32.2(b)(4)(A). The court did not comply with this requirement.

The government concedes that this omission constituted an error that was plain. The resulting issue is whether the error affected Roosevelt's substantial rights and "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993). The error affected Roosevelt's substantial rights only if the outcome was likely affected. *Romero*, 491 F.3d at 1178.

The outcome here was unaffected because Roosevelt had notice of a potential forfeiture in the amount of $16,985,250. Indeed, Roosevelt does

25

not question the existence of notice. Nor could he do so, for he objected before the hearing to any forfeiture. R. vol. 3, at 2678-80; R. vol. 4, at 77-78.[10]

Though he was on notice of a potential forfeiture, Roosevelt argues that he was deprived of "procedures to contest the deprivation of property rights." Appellant's Reply Br. at 22 (internal quotation marks & emphasis omitted). He argues that his circumstances are analogous to those in *United States v. Shakur,* where the defendant had "timely contested six of the government's Forfeiture Allegations, but his objections were entirely ignored." 691 F.3d 979, 988 (8th Cir. 2012).

Roosevelt does not explain how the lack of a preliminary forfeiture order deprived him of an opportunity to be heard. Nor does he argue that he would have made additional objections if a preliminary order of forfeiture had been entered. These circumstances differ from those in *Shakur*, where the defendant's pre-sentencing objections were completely ignored.

In contrast, Roosevelt's only objection was addressed to his satisfaction at the sentencing. Nor is it true here, as it was in *Shakur*, that "[t]he only mention of forfeiture came at the very end of the lengthy

---

[10]    In objecting before the hearing, Roosevelt argued that it was unclear how much of the $16,985,250 had been generated by sales of marijuana rather than cocaine. R. vol. 4, at 77. That objection was addressed to Roosevelt's satisfaction at the sentencing, and the issue became moot. R. vol. 3, at 2680.

hearing when the district court stated, after pronouncing Shakur's sentence, 'I am going to enter a forfeiture in this case.'" *Id.* at 986. Thus, we conclude that the lack of a preliminary order of forfeiture did not affect Roosevelt's substantial rights.

In addition, Roosevelt "challenges the forfeiture judgment for the same reasons that he challenges his conspiracy conviction, namely that there was insufficient evidence of the single conspiracy, and a variance." Appellant's Opening Br. at 59. We reject this argument for the same reasons discussed above. *See* Parts I-II, above.

Roosevelt also urges vacatur on the ground that the final judgment did not state the forfeiture amount. It is true that the final judgment omitted the amount of the forfeiture. Instead, the judgment purported to make the preliminary order of forfeiture final as to Roosevelt. But as just discussed, the court never filed a preliminary order of forfeiture. As a result, the final judgment failed to incorporate the amount of the forfeiture.

It was clear from the sentencing proceeding, however, that forfeiture was ordered in the amount alleged in the superseding indictment and reported in the presentence report, $16,985,250. R. vol. 3, at 2679-80 (addressing Roosevelt's objection to the forfeiture amount listed in the presentence report). Federal Rule of Criminal Procedure 32.2(b)(4)(B) provides that the court must (1) "include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows

of the forfeiture at sentencing" and (2) "include the forfeiture order, directly or by reference, in the judgment, but the court's failure to do so may be corrected at any time under Rule 36." In turn, Rule 36 provides that "the court may at any time correct a clerical error in a judgment . . . ." Fed. R. Crim. P. 36.

Roosevelt does not dispute oral pronouncement of a forfeiture order in the amount of $16,985,250. Thus, the failure to specify the forfeiture amount in the final judgment is an error that may be corrected "at any time" under Rule 36. *See United States v. Sasser*, 974 F.2d 1544, 1561 (10th Cir. 1992) (holding that a written judgment could be corrected to provide that the defendant's sentences would be served consecutively because the sentencing transcript revealed that the district court had intended the sentences to run consecutively); *see also United States v. Villano*, 816 F.2d 1448, 1451 (10th Cir. 1987) (en banc) ("The sentence orally pronounced from the bench is the sentence.").

In sum, the failure to state the forfeiture amount in the judgment does not warrant vacatur of the forfeiture. But we call the oversight to the attention of the district court so that it may correct the judgment.

We affirm the order of forfeiture in the amount of $16,985,250.

28

**VI.    Disposition**

We affirm the convictions and forfeiture order, but remand for resentencing based on the error in calculating the amount of marijuana attributable to Roosevelt.